UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL LINDSEY,

      Plaintiff,

v.                                      Case No:   2:16-cv-317-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## <u>OPINION AND ORDER</u>

Before the Court is Plaintiff Michael Lindsey's Complaint (Doc. 1) filed on April 29, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income.[1]  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  In addition, Plaintiff filed a Reply (Doc. 36) and a Sur-Reply Memorandum with Exhibits (Doc. 41).  The Commissioner filed a Response to Plaintiff's Sur-Reply (Doc. 43).  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1]  Plaintiff filed a Motion for Summary Judgment (Doc. 27) rather than a Memorandum in Support of the Complaint as was required in the Scheduling Order (Doc. 23 at 1).  The Court entered an Order (Doc. 28) terminating the Motion for Summary Judgment and construing the filing as a Memorandum in Support of the Complaint.

# I.     Social Security Act Eligibility, the ALJ Decision, and Standard of Review

## A.     Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## B.     Procedural History

On April 5, 2013, Plaintiff filed an application for supplemental security income ("SSI").[2]  (Tr. at 138, 296-302).  Plaintiff asserted an onset date of August 1, 1988.  (*Id.* at 296). Plaintiff later amended his onset date to April 5, 2013, the date of the Application.  (*Id.* at 316). Plaintiff's application was denied initially on July 18, 2013 and on reconsideration on February 10, 2014.  (*Id.* at 138, 152).  A hearing was held before Administrative Law Judge ("ALJ") Hope G. Grunberg on December 3, 2015.  (*Id.* at 54-99).[3]  The ALJ issued an unfavorable decision on

---

[2]  Even though the record also contains an Application for Disability Insurance Benefits, Plaintiff appears to be pursuing benefits under SSI only.  (*See* Tr. at 305-06; Doc. 27 at 1).

[3]  A prior hearing was held before ALJ MaryJoan McNamara.  (Tr. at 100-31).  Apparently ALJ McNamara was unable to complete the case, and ALJ Grunberg decided to hold a "brand-new hearing."  (*See* Tr. at 57).

December 22, 2015.  (*Id.* at 29-41).  The ALJ found Plaintiff not to be under a disability from April 5, 2013, the date the application was filed.  (*Id.* at 29).

On April 6, 2016, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on April 29, 2016.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 24).

### C.    Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[4]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 5, 2013, the application date.  (Tr. at 31).  At step two, the ALJ found that Plaintiff suffered from the severe impairment of hypertension; degenerative disc

---

[4]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

disease of the lumbar spine; mood disorder, NOS; unspecified anxiety disorder; impulse control disorder; and cannabis use disorder (20 C.F.R. §§ 404.920(c)).  (*Id.*).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  (*Id.* at 32).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") as follows:

> to perform light work . . . except the claimant can occasionally climb ladders, ropes or scaffolds.  He should avoid workplace hazards such as unprotected heights or dangerous, moving machinery.  The claimant is limited to understanding, remembering and carrying out simple, routine and repetitive tasks.  There should be no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other).  The claimant may make judgments on simple work, and respond appropriately to usual work situations in a routine work setting that is repetitive from day to day.  Changes should be easily explained and no more than occasional. The claimant may have occasional interactions with the public and co-workers. There should be no work in teams or in tandem.

(*Id.* at 35).

The ALJ determined that Plaintiff had no past relevant work.  (*Id.* at 39).  Upon consideration of Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that the claimant can perform.  (*Id.* at 40). Specifically, the ALJ found Plaintiff was able to perform the following jobs:  (1) tag inserter, DOT # 222.567-018, SVP 2, light exertional level; (2) garment sorter, DOT # 222.687-014, SVP 2, light exertional level; and (3) labeler, DOT # 920.687-126, SVP 2, light exertional level.  (*Id.* at 40).  The ALJ concluded that Plaintiff was not under a disability from April 5, 2013, through the date of the decision.  (*Id.* at 41).

**D.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 U.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises six issues.  As stated by Plaintiff they are:

(1)     The ALJ erred in failing to conclude that Plaintiff is incapable of performing any one of the four basic mental demands of work;

(2)     The ALJ erred in assigning great weight to an opinion and then ignoring parts of that opinion when determining Plaintiff's RFC;

(3)      The ALJ erred by assigning improper weight to the medical opinions;

(4)      The ALJ erred in ignoring the treating physician rule;

(5)      The ALJ erred by failing to mention the diagnoses of Dr. Pappas and Dr. Lehninger in the RFC determination; and[5]

(6)      This action should be remanded under sentence six based upon a favorable determination by the State Agency/DDS finding Plaintiff disabled with an onset date of one (1) day after the unfavorable decision here.[6]

(Doc. 41 at 1). The Court addresses each of these issues grouped logically below.

### A.    Four Basic Mental Demands of Work

Plaintiff argues that the ALJ erred in her RFC finding that Plaintiff is capable of performing any of the basic mental demands of work. (Doc. 27 at 4-7). The Commissioner contends that the ALJ properly assessed Plaintiff's RFC and included certain appropriate accommodations as identified by the ALJ. (Doc. 29 at 20-24).

At the fourth step in the evaluation process, the ALJ is required to determine a plaintiff's RFC and, based on that determination, to decide whether a plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a plaintiff's RFC is within the authority of the ALJ and along with a plaintiff's age education and work experience, the RFC is considered in determining whether a plaintiff can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether a plaintiff can work, the ALJ must determine a plaintiff's RFC using all of the relevant medical

---

[5] Plaintiff raised this issue for the first time in the Reply (Doc. 36). The Commissioner discussed Dr. Pappas' and Dr. Lehninger's opinion in the Commissioner's Memorandum of Law (Doc. 29 at 11-13) and, thus, the Court will address this issue as well.

[6] Plaintiff raised this issue for the first time in the Sur-Reply (Doc. 41). The Commissioner responded to this issue in the Response (Doc. 43).

and other evidence in the record. *Phillips*, 357 F.3d at 1238-39; 20 C.F.R. § 404.1520(e). An ALJ must consider all of a plaintiff's mental impairments that are sufficiently severe in combination with all of a plaintiff's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

Plaintiff claims that the evidence of record establishes that Plaintiff is unable to meet the mental demands of work. (Doc. 27 at 7). To support this contention, Plaintiff cites to: (1) records from February 2013; (2) his Case Manager, Anthony Garcia's Third Party Function Report on January 9, 2014; (3) his Case Manager, Jada Caron's opinion of July 6, 2015; and (4) diagnoses of August 31, 2015. (*Id.* at 4-7). The Court addresses each of Plaintiff's contentions in turn.

### 1. February 2013 Records

Plaintiff asserts that the February 2013 records show that Plaintiff has mental impairments that led to auditory hallucinations and suicidal ideation and, thus, this matter should be reversed or alternatively remanded. These February 2013 records are, however, from a time period prior to the amended alleged onset date of April 5, 2013. (*See* Tr. at 315). Even so, the ALJ considered these records noting that "[s]hortly before the amended alleged onset date in this case, the claimant was committed to inpatient hospital care under Florida's Mental Health Act of 1971, also known as the 'Baker Act,' indicating he was considered at risk of self-harm (1F/7)." (Tr. at 37). The ALJ acknowledged that at that time, Plaintiff showed significant anxiety and suicidal ideation with possible situational components of Plaintiff's symptoms, including receiving a bill that triggered an anxiety attack. (*Id.*). The ALJ then reviewed records after the alleged onset date from early 2014. (*Id.*). The ALJ determined that:

> since the amended alleged onset date, the record suggests the claimant's symptoms
> have relented somewhat, treatment notes from early 2014 revealing full medical

> compliance, the claimant endorsing symptoms improvement with treatment, while notes from July 2014 show the claimant '[r]eport[ed] [his] agitation and anger [were] controlled,' leading providers to characterize the claimant as '[c]linically stable with good response to treatment' (6F/42).

(*Id.*).

The ALJ considered the medical records from February 2013, prior to the alleged amended onset date. (*Id.* at 37). The ALJ then reviewed the medical records during the relevant time period. (*Id.*). These later medical records indicated an improvement, including that Plaintiff's agitation and anger were controlled and Plaintiff appeared clinically stable. (*Id.*). Thus, the ALJ thoroughly reviewed the medical records from February 2013, prior to the alleged onset date, but relied upon the more recent relevant medical records that indicated improvement to determine Plaintiff's RFC. The Court finds that the ALJ properly considered the Plaintiff's medical records, including those from February 2013, in formulating Plaintiff's RFC.

### 2.  Case Managers' Reports and Opinions

Plaintiff argues that the ALJ erred in affording little weight to the Third Party Function Report of Case Manager Anthony Garcia dated January 9, 2014 and the opinion of Case Manager Jada Caron dated July 6, 2015. (Doc. 27 at 4-5, 6). Plaintiff cites to Mr. Garcia's Report, which states that Plaintiff does not focus well on assigned tasks; is disoriented; is challenged in following instructions; is often hopeless; usually secludes himself; is often poorly groomed; and has decreased attention span. (*Id.* at 5). Further, Plaintiff cites to the July 6, 2015, opinion of Ms. Caron where she opines that Plaintiff is not capable of work due to depression, anxiety, isolation, suicidal tendencies, memory issues, and untreated physical conditions. (*Id.* at 6). The Commissioner asserts that the ALJ supported her decision to afford the opinions of Mr. Garcia and Ms. Caron little weight, noting that case managers were "other source opinions," their opinions conflicted with the preponderance of the evidence, and finally that Ms. Caron's

opinion that Plaintiff could not maintain employment was an issue reserved to the Commissioner.  (Doc. 29 at 17-19).

To begin, case managers, such as Mr. Garcia and Ms. Caron, do not qualify as "acceptable medical sources" pursuant to 20 C.F.R. § 404.1513(a) and SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).[7]  As such, non-acceptable medical sources cannot establish the existence of a medical determinable impairment.  *See* SSR 06-03p.  Although not an "acceptable medical source," "other sources" are entitled to consideration as set forth in SSR 06-03p as follows:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.  SSR 06-03 provides that opinions from medical sources that are not acceptable are important and should be evaluated to determine the severity and functional effects of an impairment.

Against this backdrop, the Court finds that the ALJ properly determined that neither Mr. Garcia nor Ms. Caron can be considered "acceptable medical sources" and are considered "other sources."  (Tr. at 38).  Thus, the ALJ appropriately determined that the information they

---

[7]  "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (internal citation omitted).

provided could not establish the existence of a medically determinable impairment, but may shed light on the severity of the alleged impairments. (*Id.*).

To that end, the ALJ considered the statements of Mr. Garcia and Ms. Caron and found, overall, that their statements were at odds with the preponderance of the evidence. (Tr. at 38). The ALJ noted that Mr. Garcia's report essentially mirrored Plaintiff's subjective allegations, while Mr. Garcia also added that Plaintiff often appeared poorly groomed with poor hygiene and showed difficulty focusing and hopelessness. (*Id.*). The ALJ also noted that Mr. Garcia found Plaintiff unable to manage a budget, drive, perform multistep tasks, and walk more than 2-3 blocks without the need to rest. (*Id.*). The ALJ found that Mr. Garcia failed to mention Plaintiff's daily bicycle rides, "which casts significant doubt on the degree of physical limitation alleged by both the claimant and Mr. Garcia." (*Id.*).

As for Ms. Caron's opinion, the ALJ noted that Ms. Caron opined that Plaintiff was unable to maintain employment due to depression, anxiety, isolation and suicidal ideation tendencies, memory issues, and untreated physical limitations. (*Id.*). The ALJ found that Ms. Caron exceeded her purview as the question of ability to maintain employment is reserved to the Commissioner. (*Id.*).

In this case, the Court finds that the ALJ considered both the opinions of Mr. Garcia and Ms. Caron. The ALJ properly compared these extreme findings with the other evidence of record and found that these opinions were at odds with the preponderance of the evidence and, accordingly, afforded them little weight. (*Id.*). The ALJ explained that fortunately, since the amended alleged onset date, Plaintiff's mental symptoms have relented somewhat, with treatment notes from early 2014 revealing full medical compliance, symptom improvement with treatment, and being clinically stable. (*Id.*). These treatment notes clearly contradict the findings

of Mr. Garcia and Ms. Caron.  In addition, the ALJ gave great weight to the opinion of  Yamir

Laboy, Psy.D., a State agency psychological consultant, who found Plaintiff moderately limited

in a number of areas such as the ability to understand and remember, but did not find that

Plaintiff had marked limitations in any area.  (*Id.* at 38).  Finally, the ALJ properly determined

that Ms. Caron exceeded her purview when finding Plaintiff unable to maintain employment.

(*Id.*).  The decision of whether a claimant is disabled and unable to work is a dispositive issue

reserved for the Commissioner and, thus, this type of medical opinion is not given any special

significance, but may be taken into consideration.  *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x

403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).  Thus, the Court finds

that the ALJ carefully considered the opinions of Mr. Garcia and Ms. Caron and did not err in

affording them little weight.

### 3.        August 31, 2015 Diagnosis

Plaintiff asserts that he was diagnosed on August 31, 2015 with:  unspecified episodic

mood disorder, unspecified mood (affective) disorder, adjustment disorder with mixed anxiety,

depressed mood, and impulse control disorder.  (Doc. 27 at 6).  Although unclear, Plaintiff

appears to argue that the ALJ erred in her RFC finding based upon these diagnoses.  First, a

"diagnosis [ ] is insufficient to establish that a condition cause[s] functional limitations."  *Wood

v. Astrue*, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d

1207, 1213 n.6 (11th Cir. 2005)).  Second, in this same treatment note, the record indicates that

Plaintiff was neat, clean, cooperative, anxious, appropriate to thought content, thought process

linear, not suicidal or homicidal ideations, alert and oriented in all spheres, memory intact,

concentration impaired per Plaintiff's report, and insight/judgment intact.  (Tr. at 591-92).  Thus,

the treatment note suggests that Plaintiff was doing well overall.  Further, due to Plaintiff's

mental impairments, the ALJ accommodated Plaintiff by including numerous limitations in Plaintiff's RFC – such as limiting Plaintiff to understanding, remembering, and carrying out simple, routine, and repetitive tasks, as well as other limitations. (*See id.* at 35, 37). Accordingly, the Court finds that the ALJ did not err in formulating Plaintiff's RFC and the ALJ's decision is supported by substantial evidence.

### B.     Weight of Dr. Laboy's Opinion

Plaintiff argues that the ALJ afforded significant weight to the opinion of Yamir Laboy, Psy.D., but failed to accommodate Dr. Laboy's finding that Plaintiff has moderate limitations in his ability to maintain attention and concentration for extended periods of time. (Doc. 27 at 7-8). The Commissioner responds that the ALJ properly considered Dr. Laboy's entire opinion and the RFC is consistent with and accounts for the limitations Dr. Laboy noted in his narrative discussion. (Doc. 29 at 9-11).

As stated above, the RFC is the most a plaintiff is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether a plaintiff can work, the ALJ must determine a plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238-39.

Yamir Laboy. Psy.D. is a State agency psychological consultant. (Tr. at 38). On January 13, 2014, Dr. Laboy completed a Mental Residual Functional Capacity Assessment. (*Id.* at 148-50). Dr. Laboy found Plaintiff moderately limited in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period; the ability to interact appropriately with the general public; the ability to accept instructions and

respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at 148-49). Dr. Laboy found that Plaintiff's ability to maintain attention and concentration as well as persist on a task is impaired by his depression that impacts his energy and motivation. (*Id.* at 149). Dr. Laboy concluded that Plaintiff should be emotionally able to perform simple, routine, repetitive tasks in settings with low social demands and which are not fast paced or quota driven. (*Id.* at 150).

In the decision, the ALJ generally agreed with Dr. Laboy's opinion that Plaintiff was not more limited than moderate and afforded Dr. Laboy's opinion "as a whole great weight." (Tr. at 38). The ALJ considered Dr. Laboy's finding that Plaintiff was moderately limited in certain areas. (*Id.* at 38). Further, the ALJ adopted Dr. Laboy's conclusions by including specific limitations in the RFC that mirror the limitations found by Dr. Laboy in his conclusions. (*See id.* at 35; 150). Specifically, Dr. Laboy found Plaintiff was limited to performing simple, routine, and repetitive tasks in a setting with low social demands that is not fast paced or quota driven. (*Id.* at 150). The ALJ determined in Plaintiff's RFC that:

> The claimant is limited to understanding, remembering and carrying out simple, routine and repetitive tasks. There should be no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other). The claimant may make judgments on simple work, and respond appropriately to usual work situations in a routine work setting that is repetitive from day to day. Changes should be easily explained and no more than occasional. The claimant may have occasional interactions with the public and co-workers. There should be no work in teams or in tandem.

(*Id.* at 35). Thus, the ALJ generally adopted Dr. Laboy's limitations in formulating Plaintiff's RFC and accounted for Dr. Laboy's findings of moderate limitations in certain areas by accommodating Plaintiff as to these limitations. Accordingly, the Court finds that the ALJ's decision as to Dr. Laboy's opinion and Plaintiff's RFC are supported by substantial evidence.

### C.	Weight of Dr. Kibria's Opinion[8]

Plaintiff argues that the ALJ failed to afford proper weight to the opinion of Eshan M. Kibria, D.O., a consultative examiner.  (Doc. 27 at 9).  The Commissioner responds that the ALJ properly afforded Dr. Kibria's opinion partial weight.  (Doc. 29 at 6).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  To evaluate a medical source, the same criteria are used whether the medical source is a treating or non-treating doctor, with the following elements to be considered:  "(1) the length of

---

[8]  Plaintiff also raises some issues concerning the ALJ's treatment of the opinion of Ann Hart, A.R.N.P.  (Doc. 27 at 9-11).  The Court addresses those issues in the next section of this Order below.

the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id.* (citations omitted).

Plaintiff states that on February 5, 2014, Dr. Kibria completed a Physical Consultative Examination that indicated that Plaintiff had a slight left limp in his gait, had decreased range of motion in his knees bilaterally, and decreased range of motion in his right hip flexion. (Doc. 27 at 9). Plaintiff argues the ALJ erred in assigning only partial weight to Dr. Kibria's opinion. (*Id.*). Plaintiff further argues that treatment notes from June 2, 2015 from Family Care East support Dr. Kibria's findings. (*Id.*). Plaintiff claims that these June 2 treatment notes found irregularities in Plaintiff's distal tibia and fibula, severe ankle valgus angulation, mild tibiotalar osteoarthritis, and moderate to advanced spondylosis with mild rightward scoliosis of his lumbar spine. (*Id.*). The Commissioner argues that Plaintiff failed to demonstrate any conflict between Dr. Kibria's report and the ALJ's RFC finding. (Doc. 29 at 6). Further, the Commissioner states that the ALJ properly explained that Dr. Kibria's notes did not include a function-by-function assessment of Plaintiff's capabilities, thereby making it of limited use in determining Plaintiff's RFC. (*Id.* at 7).

On February 5, 2014, Dr. Kibria examined Plaintiff. (Tr. at 468-69). Dr. Kibria found *inter alia*, that Plaintiff's back was tender to palpation on the right, moderately limited in lumbar extension, slightly limited in tilting left, slightly limited in tilting right, Plaintiff could not walk on left heel, and Plaintiff had 5.5 strength in all extremities. (*Id.*). Dr. Kibria's impression was "[m]ost pain when walk[ing] or lift[ing] and trouble with bending and tying shoe laces." (*Id.* at 469).

The ALJ afforded Dr. Kibria's findings partial weight. (*Id.* at 39). The ALJ noted that Dr. Kibria failed to include a function-by-function assessment of Plaintiff's capabilities and, thus, Dr. Kibria's notes were of limited use in determining Plaintiff's RFC. (*Id.*). The ALJ also noted that even though Plaintiff had some difficulty in bending to tie his shoe, Dr. Kibria reported that Plaintiff's straight leg raise testing was negative bilaterally and Plaintiff demonstrated full 5/5 strength in all extremities. (*Id.*).

In this case, the ALJ considered Dr. Kibria's opinion and correctly noted that Dr. Kibria failed to include a function-by-function analysis to assist the ALJ in determining Plaintiff's limitations, if any, to perform work. Before an ALJ may determine a plaintiff's RFC, the ALJ must first assess the plaintiff's abilities on a function-by-function basis. *Cobb v. Comm'r of Soc. Sec.*, No. 6:13-CV-842-ORL-GJK, 2014 WL 4495208, at *3 (M.D. Fla. Sept. 12, 2014) (citing SSR 96-8p; 20 C.F.R. § 404.1545(b)). Thus, the ALJ correctly noted that Dr. Kibria's opinion was of limited use due to the absence of a function-by-function analysis. Moreover, Plaintiff fails to establish any conflict between Dr. Kibria's opinion and Plaintiff's RFC finding. Even though Dr. Kibria found Plaintiff walked with a limp and had trouble bending, Dr. Kibria did not include any limitations as to these complaints in his findings. (Tr. at 468-69). The Court finds that the ALJ did not err in affording Dr. Kibria's opinion partial weight, and the ALJ's decision as to this issue is supported by substantial evidence.

### D. Weight of Ann Hart, A.R.N.P.'s Opinion

Plaintiff claims that the ALJ erred in affording little weight to the opinion of Plaintiff's treating nurse practitioner, Ann Hart. (Doc. 27 at 9, 12). Specifically, Plaintiff argues that the ALJ erred in assigning little weight to Ms. Hart's opinion simply because she is not an "acceptable medical source" and, additionally, the ALJ erred in finding that Ms. Hart's opinion

was conclusory and factually inaccurate. (*Id.* at 12; Doc. 36 at 2-3). The Commissioner argues in response that the ALJ properly considered Ms. Hart as an "other source" and properly evaluated her opinion finding it extreme and unjustified. (Doc. 29 at 15-16).

The same legal standard concerning "other sources" that applied to the opinions of Mr. Garcia and Ms. Caron also applies to Ms. Hart. Briefly, nurse practitioners do not qualify as "acceptable medical sources" pursuant to 20 C.F.R. § 404.1513(a) and SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). As with case managers, nurse practitioners as non-acceptable medical sources cannot establish the existence of a medical determinable impairment, but are entitled to consideration as to an impairment severity and functional effects together with all other relevant evidence in the file. *See* SSR 06-03p.

In the decision, the ALJ gave little weight to Ms. Hart's opinion. (Tr. at 39). The ALJ found Ms. Hart not to be an acceptable medical source. (*Id.*). Further the ALJ found Ms. Hart's assessments that Plaintiff possessed no ability to follow work rules, relate to coworkers, deal with the general public, use judgment, interact with supervisors, handle workplace stress, function independently, maintain attention and concentration for extended periods, or understand, remember, or carry out even simple job instructions to be extreme and unjustified by the preponderance of the evidence. (*Id.*). Consequently, the ALJ afforded Ms. Hart's opinion little weight. (*Id.*).

In this case, the ALJ properly considered Ms. Hart's opinion as an "other source" pursuant to SSR 06-03p. Plaintiff asserts that Ms. Hart was overseen by two doctors – namely Don Pappas, M.D. and Frank Lehninger, M.D. – but these physicians' names and signatures were not part of Ms. Hart's treatment notes or her Medical Assessment. (*See, e.g.*, 589-96, 604-

23).  Thus, Ms. Hart's opinion cannot establish the existence of a medical impairment, but may be considered regarding the severity of an impairment and the functional effects.  SSR 06-03p.

Even though an "other source," the ALJ considered Ms. Hart's opinion and found her opinions to be extreme and unsupported by the evidence of record.  (Tr. at 38-39).  Briefly, the ALJ noted that despite numerous stressors, Plaintiff did not require intensive or inpatient treatment.  (Tr. at 37).  Further, the ALJ explained that fortunately, since the amended alleged onset date, Plaintiff's mental symptoms have relented somewhat with treatment notes from early 2014 revealing full medical compliance, symptom improvement with treatment, and being clinically stable.  (*Id.*).  These treatment notes directly contradict Ms. Hart's opinion.  Finally, the ALJ gave great weight to the opinion of  Yamir Laboy, Psy.D., a State agency psychological consultant, who found Plaintiff moderately limited in a number of areas such as ability to understand and remember, but did not find that Plaintiff had marked limitations in any area.  (*Id.* at 38).

The Court finds that the ALJ considered the treatment notes and opinion of Ms. Hart. The ALJ compared her opinion to the other evidence of record and found that Ms. Hart's opinion was extreme and unjustified by a preponderance of the evidence in the case.  The ALJ cited to other record evidence to support this finding.  Accordingly, the Court finds that the ALJ carefully considered the opinion of Ms. Hart and did not err in affording her opinion little weight.  Thus, substantial evidence supports the ALJ's decision as to this issue

### E.    Weight of Dr. Pappas' and Dr. Lehninger's Opinions

Plaintiff argues that the ALJ erred in failing to discuss the diagnoses of John Pappas, M.D. and Frank Lehninger, M.D.  (Doc. 36 at 4).  Plaintiff claims that Dr. Lehninger detailed Plaintiff's history of depression, anxiety, and psychosis.  (*Id.*).  Plaintiff also asserts that Dr.

Pappas found Plaintiff's daily activities were limited. (*Id.*). Plaintiff claims that these physicians' records show limitations beyond just diagnoses. (*Id.* at 4-5).

The Commissioner argues that Dr. Pappas' and Dr. Lehninger's treatment notes support the ALJ's RFC finding that Plaintiff could perform simple, routine, repetitive work with the additional social and adaptation limitations found by the ALJ. (Doc. 29 at 12). The Commissioner claims that the mental examinations by these sources were generally benign and indicated Plaintiff was able to perform work as outlined in Plaintiff's RFC. (*Id.*).

On July 1, 2015, Dr. Pappas evaluated Plaintiff. (Tr. at 600-603). Upon examination, Dr. Pappas found Plaintiff cooperative, euthymic, affect appropriate, thought process linear, no suicidal or homicidal ideations, alert and oriented in all spheres, memory intact, concentration intact, insight/judgment intact. (*Id.* at 602). Dr. Pappas diagnosed Plaintiff with mood disorder NOS. (*Id.* at 603). On November 4, 2015, Plaintiff was evaluated by Dr. Lehninger. (*Id.* at 597-599). Upon examination, Dr. Lehninger found Plaintiff to be neatly dressed; having good hygiene; cooperative; pleasant; polite; a good historian; thoughts logical and goal-directed; speech normal; denying any hallucinations; insight and judgment good; alert and oriented; and denying any suicidal or homicidal ideations. (*Id.* at 598). Dr. Lehninger diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, cannabis use disorder, moderate in sustained remission. (*Id.* at 599). Plaintiff reported that his current medication regimen had been helpful in the treatment of his depression/anxiety and history of psychosis. (*Id.*).

Although the ALJ did not specifically mention Dr. Pappas and Dr. Lehninger, she did refer to Dr. Lehninger's treatment notes in conjunction with Plaintiff not requiring intensive or inpatient treatment due to stressors. (*See id.* at 37). Upon consideration of the records cited by Plaintiff as to these two physicians, the Court finds that even if the ALJ erred in failing to

mention these treating physicians and assign weight to their opinions, the error was harmless. *Winschel*, 631 F3d at 1178-79; *Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006) (holding remand not warranted when an ALJ commits harmless error). The error was harmless because these opinions were consistent overall with the ALJ's conclusion that with certain accommodations, Plaintiff's mental limitations would not preclude him from performing work. *See Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016). In addition, Plaintiff failed to identify: (1) any additional limitations found in these doctors' records that are not reflected in Plaintiff's RFC; or (2) any conflicts between these doctors' records and Plaintiffs' RFC. Accordingly, the Court finds that even if the ALJ erred in failing to discuss or weigh the opinions of Dr. Pappas and Dr. Lehninger, the error was harmless because their opinions were consistent with the ALJ's conclusions and consistent with Plaintiff's RFC finding.

### F.     Subsequent Favorable Decision

In the Sur-Reply (Doc. 41) Plaintiff contends that he received a subsequent favorable determination by the State Agency/DDS, finding Plaintiff disabled with an onset date of December 23, 2015, one day after the December 22, 2015 Unfavorable Decision issued by the ALJ in the instant case. (Doc. 41 at 1).[9] Plaintiff seeks remand under sentence six of 42 U.S.C. § 405(g) based upon this alleged new, material, and chronologically relevant evidence. (*Id.*). The Commissioner argues in response that as an initial matter, Plaintiff's partial reliance on a

---

[9] Plaintiff states that the onset date for the subsequent favorable decision changed from December 23, 2015 to April 1, 2016 based upon the rule that SSI benefits may be awarded no earlier than the date the SSI application was filed. (Doc. 41 at 1 n.1; 129-30). In this case, Plaintiff maintains that a second SSI application could not have been filed until after the Appeals Council in the instant case issued its decision. (*Id.*). Here, the Appeals Council issued its decision on April 6, 2016. (*Id.*). Thereafter, on April 29, 2016, Plaintiff filed his second application. (*Id.*). Plaintiff asserts that because the subsequent SSI claim was filed in April, the onset date becomes the first day of the month in which the claim was filed. (*Id.*).

subsequent favorable decision is misplaced. (Doc. 43 at 3). Further, the Commissioner contends that: (1) Plaintiff failed to show that the treatment notes could reasonably be expected to change the ALJ's decision; (2) the vast majority of the treatment notes post-date the ALJ's December 22, 2015 decision and are not chronologically relevant; and (3) Plaintiff failed to establish good cause for not submitting certain medical records during the administrative proceedings in this case. (Doc. 43 at 3-5).

### 1.    Legal Standard for a Subsequent Favorable Decision

A later favorable decision – in and of itself – is not evidence for the purposes of 42 U.S.C. § 405(g). *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2487 (2016). "A decision is not evidence any more than evidence is a decision." *Id.* Nevertheless, the evidence supporting the subsequent decision may constitute new and material evidence under § 405(g). *Id.* at 821-22. New additional evidence that was presented to the Court and not to the administrative agency must be considered under a Sentence Six analysis. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Sentence Six provides a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting 42 U.S.C. § 405(g)).

To obtain a remand under sentence six the claimant must establish that:

(1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level.

*Hunter*, 808 F.3d at 821 (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); internal quotations omitted). Here, since a good cause analysis and a materiality analysis

are dispositive of whether a remand under sentence six is warranted as to the additional evidence, the Court will address these two issues.

### a. Whether Good Cause Exists

Plaintiff asserts good cause exists for not submitting the additional evidence during the administrative process. (Doc. 41 at 3). Plaintiff claims that Dr. Pappas' January 13, 2016 medical records were not submitted to counsel and were not part of the administrative record here. (*Id.* at 3). Plaintiff claims that Dr. Pappas' January 13, 2016 Medical Source Statement "was never sent to the Plaintiff and was only discovered upon receipt of the underlying evidence supporting the subsequent favorable decision as can be seen by the fax date on this document from the David Lawrence Center to the State Agency (i.e. July 14, 2016 at 11:29am)." (*Id.* at 5 n.22). Plaintiff further claims that the subsequent favorable decision was based in part on Dr. Pappas' January 13, 2016 Medical Source Statement and Dr. Pappas' and Ms. Hart's May 27, 2016 Supplemental Mental Impairment Questionnaire. (*Id.* at 3).

The Commissioner asserts that Plaintiff has not established good cause for failing to submit the Medical Source Statement and Questionnaire during the administrative proceeding. (Doc. 43 at 5). The Commissioner contends that Plaintiff does not identify any reason for not requesting and forwarding Dr. Pappas' complete Medical Source Statement to the Appeals Council while it reviewed the ALJ's decision. (*Id.* at 6).

Regarding good cause, the Eleventh Circuit has held:

[T]he good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987). The requirement was designed to prevent claimants from attempting to withhold evidence and to avoid the danger of encouraging them to seek after-acquired evidence, and then use such evidence as an unsanctioned

backdoor means of appeal. *Id.* (quoting *Szubak v. Secretary*, 745 F.2d 831, 834 (3d Cir. 1984)).

*Hunt v. Colvin*, No. 4:13-CV-02081-JEO, 2015 WL 727942, at *6 (N.D. Ala. Feb. 19, 2015) (internal quotations omitted). Further, neither procrastination nor oversight are appropriate bases to establish good cause. *See Caulder*, 791 F.2d at 879; *Rosenkranz v. Soc. Sec. Admin., Comm'r*, No. 4:12-CV-2249-AKK, 2013 WL 2108144, at *5 (N.D. Ala. May 15, 2013).

Here, the medical records dated November 4, 2015, December 14, 2015, January 13, 2016, and February 18, 2016 all existed prior to the Appeals Council's decision of April 6, 2016. (Doc. 41-1 at 1-19). Plaintiff's only argument is that these records—especially the January 2016 Medical Source Statement from Dr. Pappas – were not sent to Plaintiff's counsel. The Court attributes the failure to obtain these records during the administrative process as an oversight on Plaintiff's counsel's part. Clearly, Plaintiff was aware that additional records existed based upon Plaintiff having visited these treating sources during the relevant time period. Thus, the Court finds no good cause to remand under sentence six as to these records.

The remaining medical records were not in existence prior to the completion of the administrative process. Thus, the Court finds good cause for the failure to submit the medical records dated April 21, 2016 through January 13, 2017 at the administrative level. (*Id.* at 18-136); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985).

> **b.** **Whether the Additional Evidence Is Material, Relevant, and Probative**

Plaintiff argues that the new evidence is material and chronologically relevant. (Doc. 41 at 3-6). Plaintiff claims that if the ALJ here had considered Dr. Pappas' Medical Source Statement dated January 13, 2016 and the May 5, 2016 Supplemental Mental Impairment Questionnaire signed by Dr. Pappas and Ms. Hart, then there exists a

reasonable possibility that these records would change the administrative result. (Doc. 41 at 8; Doc. 41-1 at 13-15, 133-34). The Commissioner argues that the vast majority of the treatment notes post-date the ALJ's December 22, 2015 decision. (Doc. 43 at 3). Thus, the Commissioner contends that these treatment notes are not relevant to the time period of this decision. (*Id.*). Further, the Commissioner maintains that the treatment records closest in time to the decision show Plaintiff doing well. (*Id.* at 3-4). The Commissioner further maintains that Dr. Pappas' January 13, 2016 Medical Source Statement and Dr. Pappas' and Ms. Hart's May 27, 2016 Supplemental Impairment Questionnaire are similar to statements in the administrative record that the ALJ discounted in her decision. (*Id.* at 4). Finally, the Commissioner argues that Plaintiff fails to show why these new records would be expected to change the administrative result. (*Id.* at 4-5).

First, the Court will begin with the records dated prior to the date the Appeals Council rendered its decision. As stated above, Plaintiff failed to establish good cause for failing to produce the medical records dated November 4, 2015 through February 18, 2016 during the administrative process. (Doc. 41-1 at 1-19). Thus, the Court will not

For evidence to be material, it must relate to a time period before the eligibility determination at issue. *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011). When reviewing an ALJ's decision, the Court must look to whether a plaintiff was entitled to benefits during a specific period of time, "which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). Here, the ALJ rendered her decision on December 22, 2015. Thus, the medical records must relate to the period of time on or before December 22, 2015.

First, the Court will begin with the records dated prior to the date the Appeals Council rendered its decision. As stated above, Plaintiff failed to establish good cause for failing to produce the medical records dated November 4, 2015 through February 18, 2016 during the administrative process. (Doc. 41-1 at 1-19). Thus, the Court will not

consider these medical records and will focus on the medical records dated April 21, 2016 through January 13, 2017. (Doc. 41-1 at 17-136).

Of these remaining records, Plaintiff specifically cites to the following medical evidence: (1) Plaintiff's involuntary in-patient hospitalization on May 2, 2016; (2) a Supplemental Mental Impairment Questionnaire completed by Dr. Pappas and Ms. Hart dated May 27, 2016; (3) a voluntary inpatient hospitalization on December 24, 2016; and (4) an inpatient hospitalization on January 13, 2017. (Doc. 41 at 3-4).

Beginning chronologically, Plaintiff was involuntarily committed to a hospital on May 2, 2016 after reporting suicidal ideations. (Doc. 41-1 at 25). Plaintiff reported having thoughts of overdosing on his medication. (*Id.*). Plaintiff was discharged on May 13, 2016. On May 27, 2016, Dr. Pappas and Ms. Hart signed a Supplemental Mental Impairment Questionnaire that found Plaintiff "suffers from a mental impairment that significantly interferes with daily functioning." (*Id.* at 133-34). On December 24, 2016, Plaintiff was voluntarily admitted to the hospital for suicidal ideations with plans to take all of his pills. (*Id.* at 50-57). Lastly, Plaintiff was voluntarily admitted to the hospital for "endors[ing] SI [suicidal ideations] with plans to cut himself or OD." (*Id.* at 118-125).

Plaintiff fails to establish how these medical records relate to the relevant time period prior to the ALJ's December 22, 2015 decision. The Court is tasked with reviewing the ALJ's decision during a specific period of time – that is the time period prior to the ALJ's decision. *Carroll*, 453 F. App'x at 892. While these medical records begin approximately four (4) months after the ALJ's decision and may be relevant to whether Plaintiff's condition deteriorated during this subsequent time period, they are not

probative of the relevant time period for this claim.  *See Wilson*, 179 F.3d at 1278

(holding that a doctor's opinion dated one year after the decision may be relevant to

determine whether a plaintiff's condition deteriorated and subsequently entitled her to

benefits, but was not probative of any issue in the case at hand).  Thus, the Court finds

that Plaintiff failed to establish that the medical records dated April 21, 2016 through

January 13, 2017 are material, relevant, and probative such that they would change the

administrative result in this case.  Accordingly, the Court finds that a remand pursuant to

sentence six is not warranted in this case.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that the decision of the ALJ is supported by substantial evidence and decided upon

proper legal standards.  Further, the Court finds that a remand pursuant to sentence six is not

warranted.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42

U.S.C. §405(g) and further Plaintiff's request to remand this action pursuant to sentence six is

**DENIED**.  The Clerk is directed to enter judgment accordingly, terminate any pending motions

and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 21, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties